DURDEN, WILLIAM L., Associate Judge.
In this cause the trial judge entered a partial summary decree from which this appeal is taken. The relevant facts which the Chancellor found to be uncontradicted appear, from a close study of the entire file, to be established without question. That being so, and this Court having determined that the decree sets forth such facts in a succinct fashion, they are set forth in full as a basis for this opinion as follows:
“Reed A. Thursby & Co., on or about February 6, 1962, executed and delivered to Williamson & Co., a Florida corporation, its promissory note in the *847 principal amount of $402,000.00, which note was secured by a mortgage on certain lands owned by the mortgagor in Pinellas County, Florida, the mortgage being foreclosed in this cause. On the same date, February 6, 1962, Williamson & Co., endorsed the promissory note to First Mortgage Investors, the plaintiffs in this cause, and assigned said mortgage to said plaintiffs. Said mortgage contained provisions for the release of portions of the mortgaged tract.
“Subsequent to the execution, delivery and recordation of the mortgage now held by plaintiffs, Reed A. Thurs-by & Co., with the consent of the plaintiffs, replatted certain of the lands encumbered by said mortgage.
“Reed A. Thursby & Co. desired to improve five of the lots in Block 34 of Shore Acres Thursby’s Second Replat, being a part of the mortgaged lands replatted by Reed A. Thursby & Co., by erecting thereon four residences. To this end, said corporation applied to Home Federal Savings and Loan Association for four mortgage loans, the proceeds of which would be used to construct said residences, and agreed to furnish Home Federal Savings and Loan Association a mortgagee’s policy of title insurance on each Of said loans insuring that its mortgage liens were good and valid first mortgage liens. Because of the replatting of the lands, the release provisions in the original mortgage were not entirely applicable, and in order to procure said mortgage loans and title insurance policies, Reed A. Thursby & Co. entered into negotiations with Williamson & Co. in an effort to modify said mortgage insofar as the release provisions were concerned. Williamson & Co., prior to March 14, 1962, advised Reed A. Thursby & Co. that a modification agreement would "be entered into by the mortgagees whereby the five lots to be so improved would be released for a consideration of $14,000.00, and WiUiamson & Co. also so advised Central Title Company, the agent for American Title Insurance Company. Relying on said representations, said agent for American Title Insurance Company, on March 14, 1962, struck from the committments to insure the mortgages to be taken by Home Federal Savings and Loan Association all exceptions relative to the mortgage lien of the plaintiffs.
“On March 14, 1962, one George Na-thanson, as attorney, on the letterhead of First Mortgage Advisory Corporation, investment advisors to First Mortgage Investors, forwarded to Central Title Company, the agent of American Title Insurance Company, a proposed form of Mortgage Modification Agreement, which agreement, among other things, provided that for a consideration of $14,000.00, the plaintiffs in this cause would release from the lien of their mortgage the five lots above mentioned. In the letter transmitting said Mortgage Modification Agreement, the said George Nathanson requested that said agreement be executed by Reed A. Thursby & Co.* Reed A. Thursby, individually, Dorothy L. Thursby, individually, and Williamson & Co. and that, upon its execution, all copies be returned to him so that he could ‘in turn transmit them to First Mortgage Investors Boston office for execution’. (Emphasis supplied.)
“The proposed Mortgage Modification Agreement was executed by Reed A. Thursby & Co., Reed A. Thursby, individually, Dorothy L. Thursby, individually, and Williamson & Co. and was returned to the said George Na-thanson. Until sometime in the month of December 1962, neither George Nathanson nor anyone else on behalf of the plaintiffs advised Home Federal Savings and Loan Association or American Title Insurance Company that the plaintiffs did not intend to ex *848 ecute the Mortgage Modification Agreement or release the five lots. In the meantime, relying upon the representations of Williamson & Co. and George Nathanson, attorney for First Mortgage Advisory Corporation, investment advisors to First Mortgage Investors, Home Federal Savings and Loan Association closed its four loans to Reed A. Thursby & Co. and disbursed to or for the benefit of Reed A. Thursby & Co. the proceeds of said loans, which proceeds were used for the purpose of erecting four residences on the five lots.
“In August, 1962, Reed A. Thursby & Co. defaulted in the payments due under its mortgage to the plaintiffs, and in December, 1962, although plaintiffs had not advised either American Title Insurance Company or Home Federal Savings and Loan Association as to the disposition of the proposed Mortgage Modification Agreement, American Title Insurance Company tendered to the plaintiffs, the sum of $14,000.00, together with interest thereon, and demanded the release of the five lots. The plaintiffs refused to release said lots from ihe lien of their mortgage, contending that the proposed Mortgage Modification Agreement had never been executed by the plaintiffs and that the release provisions in the original mortgage provided, in substance, that the mortgagees were under no duty to release lots from the lien of said mortgage when the mortgage was in default. Shortly thereafter, this suit was instituted to foreclose plaintiffs’ mortgage lien upon all of the property embraced within said mortgage including the five lots heretofore mentioned.”
Based upon the findings above set out, the Chancellor concluded that he:
“should treat the proposed Mortgage Modification Agreement as though it had been executed by the plaintiffs and should cause the five lots to be released from the lien of the mortgage upon the payment of $14,000.00 plus an appropriate amount of interest. Any other holding would result in the plaintiffs being unjustly enriched by the enhancement of the security of their mortgage to the extent of the value of the improvements placed upon said lots with the proceeds of the loans of Home Federal Savings and Loan Association. To so hold will not in any wise injure the plaintiffs for the reason that they will receive the exact amount of money provided in the proposed Mortgage Modification Agreement and are only prevented from receiving a windfall.”
This case falls squarely within the principles as announced by this Court in Koschorek v. Fischer, 145 So.2d 755, where it is stated:
“The fundament of defendant’s resistance to the motion for summary decree by plaintiffs is primarily the defense of waiver and estoppel. It is well to mention certain guiding principles of law as these concern acceleration of mortgage indebtedness because of default or breach of terms or conditions of the instrument. A long-established principle with respect to waiver and estoppel is that, through his conduct, a holder of a mortgage may induce others to believe and act upon the belief that he will not enforce it and, because of this, may be estopped from doing so, as to them. See Kreiss Potassium Phosphate Co. v. Knight, 1929, 98 Fla. 1004, 124 So. 751; Harrell v. Lombard, Fla.App.1960, 122 So.2d 625. Under an acceleration clause, if a mortgagee does not choose within a reasonable time after default to declare the whole of the indebtedness due, he will be deemed to have waived such right, especially where such delay operated to the advantage of the mortgagee or to the detriment of the mortgagor. See Gus’ Baths v. Lightbown, 1931, 101 Fla. 1205, 133 So. 85, 135 So. 300. A chancellor has a right to deny *849 mortgage foreclosure predicated upon acceleration where substantial equities operate to render the acceleration unconscionable. See Lieberbaum v. Surfcomber Hotel Corp., Fla.App.1960, 122 So.2d 28.”
See also the case of Lieberbaum v. Surfcomber Hotel Corp., 122 So.2d 28, where the District Court of Appeal of Florida, Third District, stated:
“ ‘The traditional role of the Chancellor must be considered in determining the equities in this cause. The plaintiffs seek the aid of a Court of Equity for the purpose of bringing about an unconscionable result. Circumstances may exist where withholding the right to accelerate is appropriate. Were this not so, there could never be occasion for the enforcement of equitable doctrines.
“ ‘The evidence is clear that plaintiffs knew, from past experience, that some excusable oversight was the cause for nonpayment of the January 25, 1959, installments. Plaintiffs could have secured payment by a single demand and prevented acceleration and possible forfeiture. To grant plaintiffs’ relief prayed for herein would be to assist them in securing an inequitable result under the circumstances existing in this case. This, a Court of Equity will not do.’ ”
Ultimately the principles of equitable jurisprudence which control this case are set forth in 12 Fla.Jur., Equity, § 52, Page 208, as follows:
“Equity will regard as done that which ought to be done. The maxim is said to be as old as courts of equity. Equity will treat the subject matter, as to all collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been done, short of destruction of constitutional rights or the intervening interests of third parties.”
This case was properly determined by the Chancellor.
Affirmed.
ALLEN, C. J., and SHANNON, J., concur.